**FILED**

JAMES J. WALDRON, CLERK

**JULY 5, 2016**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY:  s/ Margaret Cohen, DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No.:        15-31598 VFP |
| VICTOR M. ALBANES and YOLANDA D. ALBANES | Chapter  7 |
| Debtors. | |
| VICTOR ALBANES and YOLANDA ALBANES, Plaintiffs, v. | Adv. Pro. No.:     16-1187 VFP |
| WELLS FARGO BANK, NA, AS TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2011-SBCI, WATERFALL VICTORIA MORTGAGE TRUST 2011-SBCI, JEMCAP LLC, PETER MARSH, SAUL EWING LLP, AND JOHN DOES 1-100, Defendants. | |

### OPINION

**APPEARANCES**:

| | |
|---|---|
| VICTOR M. ALBANES | SAUL EWING LLP |
| YOLANDA ALBANES | Dipesh Patel, Esq. |
| Debtors | One Riverfront Plaza, Ste. 1520 |
| 128 1st Street, Apt. 3 | 1037 Raymond Boulevard |
| Elizabeth, NJ  07206 | Newark, NJ  07102 |
| | Counsel to Wells Fargo Bank, NA |

LAW OFFICES OF WEBER AND PERSKIE
Nicole L. Perskie, Esq.
551 New Road, Ste. B
Somers Point, NJ  08244
Counsel to Debtors/Plaintiffs

**HONORABLE VINCENT F. PAPALIA, United States Bankruptcy Judge**

## I.   INTRODUCTION

This matter is before the Court on the motion of the following Defendants to dismiss with prejudice the adversary proceeding filed by the Debtors for failure to state a claim upon which relief can be granted and for procedural bars including *res judicata*, collateral estoppel and the *Rooker-Feldman* doctrine based on prior proceedings in this Court and in the Superior Court of New Jersey, Chancery Division, General Equity Part, Union County (the "State Court").   The Defendants are:

(1)  Wells Fargo Bank NA as Trustee for Waterfall Victoria Mortgage Trust 2011-SBC1 ("Wells Fargo")
(2)  Waterfall Victoria Mortgage Trust 2011-SBC1 ("Waterfall")
(3)  Jemcap LLC
(4)  Peter Marsh
(5)  Saul Ewing LLP

Peter Marsh in his certification describes Jemcap, LLC, as "Special Servicer to Wells Fargo Bank NA, as Trustee for Waterfall Victoria Mortgage Trust 2011-SBC1" (Dkt. No. 15, ¶ 1).  The Debtors, represented by Nicole Perskie, Esq., first filed in opposition only an unsigned document which purported to be their Affidavit (Dkt. No. 19) and then, after adjournments granted by this Court at the Debtors' request and over Wells Fargo's objection, filed a *pro se* Brief and Affidavit on June 27, 2016 (Dkt. No. 21).   For the reasons set forth below, the Court grants the Defendants' motion and dismisses the Debtors' adversary proceeding with prejudice.

## II.   JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on October 17, 2013.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (O).

Venue is proper in this Court under 28 U.S.C. § 1408.  The Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

## III.        STATEMENT OF FACTS

On August 8, 2003 Greenpoint Mortgage Funding, Inc. ("Greenpoint") made a $227,500 loan to co-Debtor Yolanda Albanes ("Yolanda") (Dkt. No. 11-3, Ex. B) in connection with the Debtors' acquisition of the real property and improvements commonly known as 128 1st Street, Elizabeth, New Jersey (the "Property"). See also Dkt. No. 11-6, Ex. E, at 26, ¶ 1  (Debtors' counterclaim asserting that the Debtors purchased the Property on that date).  The loan was secured by a mortgage given by both Debtors to Greenpoint on August 8, 2003, with respect to the Property, which was recorded on August 20, 2003 (Dkt. No. 11-4, Ex. C).  The note and mortgage were ultimately assigned to Wells Fargo Bank NA as Trustee for Waterfall Victoria Mortgage Trust 2011-SBC1 on March 8, 2011 (recorded on October 4, 2011 and re-recorded on October 19, 2011 ("Wells Fargo," or, collectively, the "Lender") (Dkt. No. 11-5, Ex. D).  On or about October 1, 2009, the Debtors defaulted on their mortgage payments (Dkt. No. 11-8, Ex. G, Foreclosure Judgment, at 2, ¶ 1).[1]

After the default, Wells Fargo filed a foreclosure action in the Superior Court of New Jersey, Chancery Division, General Equity Part, Union County, on or about September 23, 2011 under Dkt. No. F-7933-12 (Dkt. No. 11-7, Ex. F, 1/19/15 State Court Hr'g Tr. 24:6-12) ("1st Foreclosure Action").  As the State Court recited and found on January 9, 2015 during the Lender's motion for summary judgment, the State Court granted summary judgment to Wells

---

[1] The Foreclosure Judgment indicates October 1, 2009 as the acceleration date.  Defendants' Brief states that the Debtors defaulted on or about September 1, 2009 (Dkt. No. 11-1, Defs.' Br. 4).

Fargo in the 1st Foreclosure Action, but the Office of Foreclosure did not enter a Final Foreclosure Judgment for failure by Wells Fargo to comply with the Notice of Intent to Foreclose requirement (Dkt. No. 11-7, Ex. F, 1/19/15 Hr'g Tr. 27:17-24). The State Court then dismissed the 1st Foreclosure Action without prejudice (Dkt. No. 11-7, Ex. F, 1/19/15 Hr'g Tr. 28:1-3).

Wells Fargo filed the 2nd Foreclosure Action on February 2, 2014 under Dkt. No. 04916-14 (Dkt. No. 11-7, Ex. F, 1/19/15 Hr'g Tr. 28:4-5). The Debtors filed an Answer and six-count Counterclaim (the "Answer") (Dkt. No. 11, Ex. E). The Answer asserted various defenses and counterclaims summarized by the Defendants in their Brief (Dkt. No. 11-1, Br. 5 and in the footnote below).[2] On January 9, 2015, the 2nd Foreclosure Action came before the State Court on Wells Fargo's ultimate motion for summary judgment.

---

[2]
    a.    no default occurred under the Loan Documents;

    b.    state court plaintiff Wells Fargo failed to state a valid claim;

    c.    state court plaintiff violated the New Jersey Consumer Fraud Act;

    d.    the Loan Documents were based on "Fraud in the Factum";

    e.    state court plaintiff committed common law fraud;

    f.    the Loan Documents were void ab initio as Greenpoint did not provide any funding;

    g.    state court plaintiff held an unsecured claim;

    h.    state court plaintiff did not have a valid claim due to lack of consideration;

    i.    the chain of title was broken and slandered title;

    j.    the assignments of the Loan Documents were fraudulent;

    k.    the state court plaintiff engaged in "chicanery";

    l.    the state court plaintiff lacked standing;

    m.    the state court plaintiff was not the real party-in-interest;

    n.    the state court plaintiff was not a holder in due course;

    o.    the state court plaintiff failed to ratify commencement of the foreclosure proceeding;

    p.    the state court plaintiff was barred from prosecuting the foreclosure action due to unclean hands;

    q.    the state court plaintiff was barred from prosecuting the foreclosure as plaintiff failed to join all indispensable parties;

    r.    the Note was not properly endorsed, thus impacting the validity of same;

    s.    the state court plaintiff committed fraud upon the court by submitted fraudulent documents;

    t.    state court plaintiff cannot produce original documents;

    u.    the state court plaintiff, and its predecessors failed to properly account for any payments made under the Loan Documents;

    v.    any debt owed to the state court plaintiff was paid in full through the Troubled Asset Relief Program;

The State Court on January 9, 2015 did not specifically address each of Debtors' many defenses line by line, but applied the standard for summary judgment on a foreclosure complaint:

> [W]hen a summary judgment is made for a mortgage foreclosure the only material issues are the validity of the mortgage . . . the existence of the debt, and the plaintiff's right to foreclose under [*Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394 (Ch. Div. 1993), *aff'd* 273 N.J. Super. 542, 545 (App. Div. 1994)].
>
> Under New Jersey law, where there's proof of execution, recording a non-payment of the note and mortgage, the mortgagee has established a prima facie case. . . .
>
> Here, the issues of indebtedness and validity of the mortgage were decided by Judge Malone in March 2, 2012 [in the 1st Foreclosure Action]. He found that the plaintiff had standing. The sole issue left to determine is whether the plaintiff has a right to foreclose.

(Dkt. No. 11-7 1/9/15 Hr'g Tr. 28:24-29:23). The Court determined that the Notice of Intent deficit had been cured (Dkt. No. 11-7, 1/9/15 Hr'g Tr. 29:24-30:6). The State Court noted that the Court in the 1st Foreclosure Action had determined that the Lender was in possession of the note and that Debtors had been provided a certified copy, so that the Debtors had no right to contest ownership of the note (Dkt. No. 11-7, 1/9/15 Hr'g Tr. 29:19-34:4; 35:2-36:11). Because the Lender had "demonstrated the execution of the documents, standing and indebtedness" and the "validity of the mortgage," the Court determined that the Lender was entitled to summary judgment (Dkt. No. 11-7, 1/9/15 Hr'g Tr. 30:7-10 and 29:19-23).

At the end of the January 9, 2015 hearing, the State Court granted the Lender summary judgment, struck Debtors' answer with prejudice, severed and dismissed the Debtors' counterclaim and sent the case to the foreclosure department as an uncontested matter (Dkt. No.

---

w.    state court plaintiff waived its right to foreclose; and

x.    the state court plaintiff was barred from commencing a legal proceeding due to the doctrine of accord and satisfaction.

(Dkt. No. 11-1, Br. 5).

11-7, Ex. F, 1/9/15 Hr'g Tr. 36:9-37:24).   The Order for Summary Judgment was entered on

January 9, 2015 (Dkt. No. 11-7, Ex. F, 22-23).   On May 22, 2015, the State Court entered Final

Judgment of Foreclosure against the Debtors in the amount of $295,028.39 plus interest and fees

(Dkt. No. 11-8, Ex. G, Final Judgment dated May 22, 2015).

On November 14, 2015, Debtors sent the Bank a Notice of Rescission of the note and

mortgage, ostensibly under 15 U.S.C. § 1635 ("Right of rescission as to certain transactions")

(the "Notice") (Main Dkt. No. 30, Debtors' Cert., Ex. A).   The State Court did not address the

rescission argument at the January 9, 2015 hearing because the Debtors did not send the Notice

until November 14, 2015 nearly six months after entry of Final Judgment.

On November 17, 2015, three days after the putative Notice of Rescission, the Debtors

*pro se* filed this bankruptcy case as a voluntary Chapter 7 (Main Dkt. No. 1, Petition).   On

February 11, 2016, Wells Fargo moved for stay relief under 11 U.S.C. § 362(d)(1) and (2) on the

bases that there is no equity in the Property (which is not necessary for reorganization in this

Chapter 7) and that the Debtors had made no postpetition payments.   Debtors objected, arguing

primarily that the note and mortgage were *rescinded* by Debtors' unilateral Notice of Rescission

mailed to the Bank on November 14, 2015 (Main Dkt. No. 30, Debtors' Cert., Ex. A).   Debtors

also argued that Wells Fargo is not the real party-in-interest and may be oversecured but

provided no evidence to counter the Lender's report of $284,000 value (Main Dkt. No. 30, 7-8).

Debtors scheduled the property with a value of $350,000 on Schedule A and then amended their

value to $285,000.   At the hearing on March 8, 2016 and by Order entered on March 14, 2016,

this Court granted stay relief to Wells Fargo (Dkt. No. 11-9, Ex. H; Dkt. No. 11-9, Ex. I, 3/8/16

Hr'g Tr.)   During that hearing, the Debtors raised virtually identical defenses which the Court

overruled for the reasons indicated.  For many of the same reasons, the Court will grant the motion to dismiss.

On March 8, 2016, immediately after the stay relief hearing, the Debtors filed the instant three-count, 109-paragraph Adversary Complaint against the Defendants seeking the following relief.  Paragraph numbers highlight significant allegations (including those in the preamble):

(1) rescission of the mortgage and related relief (¶¶ 1-5); including an argument at ¶ 29 that the loan was never "consummated" in an attempt to extend the rescission-notice period.  As set forth below, rescission does not apply to the Debtors' mortgage.  15 U.S.C. § 1635(e)(1);

(2) damages for fraud by omission; such as failing to tell the Debtor(s) that the loan could be assigned, sold, pooled (¶¶ 96, 97c, d, e);

(3) damages for fraud in the inducement (that is, inducing Yolanda to enter the loan) based on a sequence of misrepresentations about the nature of the loan similar to those set forth in Count II ("fraud by omission").  These alleged misrepresentations are in most relevant part:

(a) failure to disclose that the loan could be assigned, sold, pooled (¶¶ 104, 106); and

(b) representation that the Debtor(s) would be able to refinance (¶ 105).

The Complaint alleges that proceedings against the Debtors should be stayed under 11 U.S.C. § 362 (¶ 6); that Defendants have engaged in conspiracy (¶ 18); that the nature of the loan changed "from a secured promissory note to a commercial investment vehicle" based on the pooling of the loan (¶¶ 97b, 106b).  As the Defendants argue in their Brief, the Complaint does not clearly indicate which counts are pleaded against which Defendants (Dkt. No. 11-1, Defs.' Br. 8).

On March 18, 2016, the Chapter 7 Trustee filed a Notice of Assets (Main Dkt. No. 57), and the Debtors immediately filed a motion to convert the case to Chapter 13 (Main Dkt. No. 60). Debtors filed a motion on April 4, 2016 to reinstate the stay in light of their pending conversion motion and a sheriff's sale scheduled for April 6, 2016 (Main Dkt. No. 66). By Order entered on April 6, 2016, the Court reinstated the stay through the end of April 21, 2016 when the conversion motion was scheduled to be heard, and made the temporary reinstatement contingent upon the Debtors' making a specified payment on the mortgage debt (Main Dkt. No. 70, Order entered 4/6/16 temporarily reinstating stay).

At the April 21, 2016 hearing the Court:

(1) denied the Debtors' motion to convert the case to Chapter 13 (Main Dkt. No. 91, Order entered 4/28/16 denying conversion);

(2) granted the Trustee's motion to compel the Debtors and tenants to cooperate with the Trustee's effort to sell the Property (Main Dkt. No. 95, Order entered 5/2/16 compelling cooperation); and

(3) granted and conditionally denied in part the Trustee's objection to Debtors' exemptions (Main Dkt. No. 97, Order entered 5/5/16 regarding exemptions).

The temporary reinstatement of the stay expired at close of business on April 21, 2016. The Defendants in the adversary proceeding filed the instant motion to dismiss on May 10, 2016.

## IV.    ARGUMENTS OF PARTIES

The Bank argues:

(1) that Count I of the Complaint (rescission) should be dismissed as a matter of law (a ruling which the Bankruptcy Court already made during motion practice on March 8, 2016);

(2) that the fraud claims at Counts II and III of the Complaint should be dismissed under Fed. R. Bankr. P. 7009 / Fed. R. Civ. P. 9(b) for failure to plead fraud with specificity and especially for failing to identify which acts are attributed to which Defendants;

(3) that the Debtors are collaterally estopped from asserting fraud in the procurement of the loan documents because the State Court *actually* decided these issues when it granted the Lender's summary judgment on the 2nd Foreclosure Action on January 9, 2015 and struck Debtors' Answer and severed the Counterclaims (before the Final Judgment of Foreclosure was entered on May 22, 2015);

(4) that all issues regarding the validity of the loan documents and the Lender's right to file the Foreclosure Actions were *actually or necessarily* decided when the State Court granted summary judgment on January 9, 2015 and struck Debtors' Answer and Counterclaims (before the Final Judgment of Foreclosure was entered on May 22, 2015) and are therefore *res judicata* in this proceeding;

(5) that the Debtors' purported challenge to the validity of the loan documents and the Lender's right to file the Foreclosure Actions constitutes a collateral attack on the State Court Judgment of Foreclosure and is barred by the *Rooker-Feldman* doctrine; and

(6) that, to the extent that the Debtors have charged Saul Ewing LLP with the creation (and submission) of "fraudulent documents" (Dkt. No. 1, ¶¶ 12, 13), these submissions are protected by the litigation privilege; and the Complaint should be dismissed with prejudice as amendment would be futile.

The Debtors argue the following in their Affidavit, which was initially filed without being signed or notarized and without exhibits (Dkt. No. 19) (there are two paragraphs numbered

7 and 8 which are referred to by page number as well).    For these reasons alone, the Affidavit

could have been rejected by the Court.  *See, e.g.,* D.N.J. L. Civ. R. 7.2(a).  However, at Debtors'

request, this Court twice adjourned the hearing on this motion -- over Wells Fargo's objections --

to allow the Debtors additional time to have the Affidavit signed, the exhibits attached and a

signed and completed Affidavit filed with the Court.  In granting the adjournments, the Court

explicitly advised the Debtors and their counsel that the Affidavit could not be amended and no

additional or supplemental submissions could be made.  Notwithstanding that directive, on June

22, 2016, the Debtors filed with the District Court a signed and revised Affidavit with exhibits

*and* a thirty-eight (38) page Brief.    Those documents were not filed with or submitted to this

Court until June 27, 2016 (Dkt. No. 21), the day before the June 28, 2016 hearing on the Motion.

Despite the lateness and impropriety of this additional submission, it was read and considered by

this Court.

    The Debtors also complain in their objection that Trustee Donald V. Biase (the

"Trustee") has behaved unprofessionally, harassed their tenants, collected rents without making

insurance and municipal utility payments in order to promote foreclosure and pursued a

"vendetta" to deprive the Debtors of their property; complain that payment to Trustee's counsel

constitutes crime or a violation of public policy; complain about actions taken by the State Court

in the 1st and 2nd Foreclosure Actions; challenge the Lender on the validity of the note,

assignments and indebtedness (all issues disposed of by the State Court); and argue that the note

and mortgage are rendered void by Debtors' November 14, 2015 "Notice of Rescission" (Dkt.

No. 19).

    As is explained below, none of the above arguments raises a valid objection or defense to

the Lender's motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon

which relief can be granted.  Most of the above are issues which are barred by virtue of collateral

estoppel, *res judicata* and/or the *Rooker-Feldman* doctrine with respect to the State Court

proceedings.  The balance is incorrect as a matter of law (e.g., invocation of rescission) or

irrelevant to the Lender's motion (e.g., complaints about the Trustee's conduct as he is not a

party to this proceeding).

## V.    STATEMENT OF LAW AND ANALYSIS

### A.  <u>Dismissal with Prejudice under Fed. R. Civ. P. 12(b)(6) and Denial of Right to Amend under Fed. R. Civ. P. 15(a)</u>

Fed. R. Civ. P. 12(b)(6), incorporated into Fed. R. Bankr. P. 7012, allows a defendant to

move to dismiss any action for failure to state a claim upon which relief can be granted by

motion made before the responsive pleading is filed.  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P.

7012.  The Court accepts all well-pleaded allegations in the complaint as true, views them in the

light most favorable to the plaintiff, and "determine[s] whether, under any reasonable reading of

the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d

224, 231 (3d Cir. 2008) (citation omitted).   A complaint must contain sufficient factual matter

which, if accepted as true, "state[s] a claim to relief that is plausible on its face."  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 652, 678 (2009) (*citing Twombly*, 550 U.S. at 556).  The pleadings

must raise the possibility, though not the probability, of the conduct complained of and show

"'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the

necessary element."  *Phillips*, 515 F.3d at 234 (*quoting Twombly*, 550 U.S. at 556).  The Court

undertakes a two-part analysis which requires it:  (1) to identify and reject labels, conclusory allegations, and formulaic recitation of the elements of a cause of action; and then (2) to draw upon its judicial experience and common sense to determine whether the factual content of a complaint plausibly gives rise to an entitlement to relief.  *Iqbal*, 556 U.S. at 678-79.  The Court "generally consider[s] only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" along with authenticated documents which form the basis of the claim.  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  A court may also "take judicial notice of a prior judicial opinion."  *McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir. 2009); *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Fed. R. Bankr. P. 7015 and Fed. R. Civ. P. 15(a)(2) instruct the Court "freely" to grant a Plaintiff leave to amend a Complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Court may deny leave to amend for "futility," if the proposed amendment still cannot state a claim on which relief can be granted or withstand a further motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  "Futility" is therefore assessed under Rule 12(b)(6) standard.  *In re Burlington*, 114 F.3d at 1434.  *See also In re NAHC, Inc., Sec. Litig.*, 306 F.3d 1314, 1332-33 (3d Cir. 2002) (leave to amend a securities fraud complaint denied as one claim was time-barred and plaintiffs had not demonstrated their ability to develop facts to support another claim).  Substantial or undue prejudice to the non-movant is the "touchstone" of the decision to grant or to deny leave to amend, and, absent that, "denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment."  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993).

12

## B. **Rescission**

15 U.S.C. § 1635 *et seq.* ("Right of rescission as to certain transactions") gives a

borrower a period of time after entering *certain* loan transactions to withdraw from them.    15

U.S.C. § 1635(a) states in relevant part:

> *Except as otherwise provided in this section*, in the case of any consumer credit
> transaction . . . in which a security interest, including any such interest arising by
> operation of law, is or will be retained or acquired in any property which is used
> as the principal dwelling of the person to whom credit is extended, the obligor
> shall have the right to rescind the transaction until midnight of the third business
> day following the consummation of the transaction or the delivery of the
> information and rescission forms required under this section together with a
> statement containing the material disclosures required under this subchapter,
> whichever is later, by notifying the creditor, in accordance with regulations of the
> Bureau, of his intention to do so.

15 U.S.C. § 1635(a) (emphasis supplied).    15 U.S.C. § 1635(e)(1) sets forth the *exception*

relevant in this case for mortgage loans *which are not subject to the rescission requirements of*

*15 U.S.C. § 1635(a).*    15 U.S.C. § 1635(e)(1) states in relevant part:

> (e) Exempted transactions; reapplication of provisions
>
> This section does not apply to--
>
>> (1) a residential mortgage transaction as defined in section 1602(w) of
>> this title.

15 U.S.C. § 1635(e)(1).

15 U.S.C. § 1602(w), now renumbered to § 1602(x), defines "residential mortgage

transaction" as follows:

> (x) The term "residential mortgage transaction" means a transaction in which a
> mortgage, deed of trust, purchase money security interest arising under an
> installment sales contract, or equivalent consensual security interest is created or
> retained against the consumer's dwelling to finance the acquisition or initial
> construction of such dwelling.

13

15 U.S.C. § 1602(x). *Derisme v. Hunter Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 335 (D. Conn. 2012), *appeal dismissed*, 2013 WL 1187853 (2d Cir. Jan. 15, 2014); *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1260 (D. Colo. 2004) (confirming that 15 U.S.C. § 1635(e)(1) excepts certain residential mortgage loans, including purchase money mortgages, from the rescission protections of 15 U.S.C. § 1635(a)).  The Court in *Betancourt*, citing to *Heuer v. Forest Hill State Bank*, 728 F. Supp. 1199, 1200-01 (D. Md. 1989), explained that the rescission statute was designed to protect homeowners "from certain sharp practices of home improvement contractors" and their financers and specifically from "surprise and oppression stemming from mortgages unwittingly executed on homes to pay for often questionable 'home improvements,'" hence the exception for the "residential mortgage transaction" used for construction or purchase money loans. *Betancourt*, 344 F. Supp. 2d at 1260-61.

Here, there is no dispute that the Debtors used the loan proceeds to fund the acquisition of the subject Property until oral argument on the Motion.  In fact, this was acknowledged by the Debtors in their Counterclaim in the State Court.  See Dkt. No. 11-6, Ex. E at 26 (alleging Debtors purchased the Property on August 8, 2003, which is the same date as the subject loan and mortgage). Thus, 28 U.S.C. § 1635 and its right of rescission simply do not apply in this case based on the record that was presented to this Court.

Notwithstanding that admission as to the purchase of the Property, the Debtors argued for the first time during the hearing on this Motion that the Property was not purchased with the proceeds of the subject Mortgage, but instead had been purchased some five years earlier in 1998.  As the Court noted in response to oral argument, it is contrary to Debtors' own Counterclaim in the State Court, as referenced above.  Thus, Debtors are at least arguably

estopped -- judicially and otherwise -- from now taking a contrary position.  But even if Debtors'

"new" position is correct, their rescission claim is still barred as a matter of law for the reasons

that follow.

### (i)      The Notice of Rescission Was Untimely

If rescission *had* applied to the Debtors' mortgage, the purported Notice of Rescission

issued by the Debtors on November 14, 2015 was out of time by any reading of the statute.  15

U.S.C. § 1635(a) (cited above) gives the borrower:

> until midnight of the third business day following the consummation of
> the transaction or the delivery of the information and rescission forms
> required under this section together with a statement containing the
> material disclosures required under this subchapter, whichever is later . . . .

15 U.S.C. § 1635(a).  15 U.S.C. § 1635(f) causes the rescission deadline to expire absolutely

within three years of the consummation of the transaction or sale of the property, *regardless* of

whether the borrower ever received the required disclosures (unless an enforcement agency

begins an investigation before the three years expires, of which there is no evidence here):

> An obligor's right of rescission shall expire three years after the date of
> consummation of the transaction or upon the sale of the property,
> whichever occurs first, notwithstanding the fact that the information and
> forms required under this section or any other disclosures required under
> this part have not been delivered to the obligor . . . .

15 U.S.C. § 1635(f).  *See Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790 (2015), a

case cited by both sides.

Under *Jesinoski* and the plain language of § 1635(f), if rescission applied in the first

instance to the Debtors' loan, the Debtors' absolute right of rescission (for any reason) would

have expired within three (3) days of the consummation of the August 8, 2003 loan and then,

under any circumstances, no later than three (3) years after the consummation of the loan.  The

mortgagor's right to rescind for the mortgagee's failure to make the required disclosures under

the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, expires "three years after the date of the

consummation of the transaction or upon the sale of the property, whichever occurs first."  15

U.S.C. § 1635(f).  As was noted by the Supreme Court in *Jesinoski*, after that three-year period,

the right to rescind expires, "[e]ven if a lender *never* makes the required disclosures."  *Jesinoski*,

135 S. Ct. at 792 (emphasis in original).  *See also Beach v. Ocwen Fed. Bank*, 523 U.S. 410,

417-18 (1998) (right to rescind under § 1635 expires after three years and may not be exercised

or asserted thereafter as an affirmative claim or defense).  Thus, in this case, the Debtors' right to

rescind expired no later than August 8, 2006, nearly ten years ago, and is now barred and

ineffective.

### (ii)    The Mortgage Loan Was Consummated

The *Jesinoski* ruling also disposes of the Debtors' argument that the three-year period

was "tolled" because the required disclosures were not made and Greenpoint was not the actual

lender (because it borrowed money to fund the loan).  Here, Debtors argue that the loan was

never consummated, as required by § 1635.  In fact, the Debtors admit that they signed the

subject Note and Mortgage (see, e.g., Dkt. No. 21 at 20 of 40), and assert that it was "table-

funded" (Dkt. No. 1, Compl. ¶ 43).  The funding and closing of the loan are further evidenced by

the Debtors' grant of the Mortgage, their apparent purchase of the Property on the same date and

the State Court Judgment of Foreclosure, which conclusively established the Debtors'

obligations to Lender under the August 8, 2003 loan documents.

For purposes of the Truth in Lending Act, consummation of the transaction occurs "at the

time a contractual relationship is created between a creditor and a customer irrespective of the

time of performance of either party." *Stevens v. Rock Springs Nat'l Bank*, 497 F.2d 307, 310

(10th Cir. 1975).  In *Stevens,* the contractual relationship was found to be created when the bank

16

contracted to extend credit. *Id.* In other cases, the contractual relationship has been held to occur when the borrower signed the promissory note, *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 246 (6th Cir. 1980) (consummation of transaction "occurs at the time a contractual relationship is created between a creditor and customer . . . irrespective of the time of performance of either party," *citing* 12 C.F.R. § 226.2(kk)); on the "date of the closing" of the loan, *Morris v. Lomas and Nettleton Co.*, 708 F. Supp. 1198, 1203 (D. Kan.1989); on the date "when the debtors became contractually obligated on the transaction," *In re Vickers*, 275 B.R. 401, 407 (Bankr. M.D. Fla. 2001). Under any of these standards, the Debtors' loan transaction was consummated by no later than August 8, 2003 when the loan was funded and closed. Thus, the Debtors' rescission claim is time barred.

Additionally, under New Jersey law the underlying mortgage merges into a final judgment of foreclosure. *Virginia Beach Fed. v. Bank of New York*, 299 N.J. Super 181, 188 (App. Div. 1997). Upon merger, the mortgage contract and contractual rights are extinguished, and the judgment of foreclosure governs. *In re Brown*, 73 B.R. 306, 307-08 (Bankr. D.N.J. 1987). Had a right to rescind ever existed and not been time-barred, there would have been no remaining contractual right after the mortgage merged into the foreclosure judgment. Finally, if rescission were not already inapplicable, time-barred and extinguished by merger, the attempt to rescind constitutes a collateral attack on the Final Judgment of Foreclosure and is barred by the *Rooker-Feldman* doctrine and *res judicata*, as is explained in more detail below.[3]

---

[3] Debtors also argued for the first time in their late-filed Brief that Lender "waived" its right to challenge the rescission notice by failing to bring an action to declare it invalid within twenty (20) days after that notice was delivered, *citing* 12 C.F.R. § 226.23. However, based on this Court's review of that regulation, there is no such requirement. The references to twenty days in that regulation relate to the tender of property by the creditor (or the failure to tender it). *See* 12 C.F.R. § 226.23(d)(2) and (3). There is no twenty-day time limit for bringing an action to void the rescission notice in that regulation. Accordingly, Debtors' twenty-day "waiver" argument is rejected as out of time and without substance.

In sum, the Debtors' claim for rescission under 15 U.S.C. § 1635 *et seq.* at Count I of the Adversary Complaint is not a legally cognizable cause of action on the face of the statute under the undisputed facts of this case.  Count I is dismissed with prejudice.

### C.  Collateral Estoppel

Collateral estoppel "protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promot[es] judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).  28 U.S.C. § 1738 ("Full faith and credit") requires federal courts to apply state-law rules of *res judicata* based on "concerns of comity and federalism." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citations omitted).

New Jersey courts regard collateral estoppel as a subset of *res judicata.  Sacharow v. Sacharow*, 177 N.J. 62, 75-76 (2003).  In New Jersey, the doctrine of collateral estoppel is considered to be "that branch of the broader law of res judicata which bars relitigation of any issue which was *actually determined* in a prior action, generally between the same parties, involving a different claim or cause of action." *Sacharow,* 177 N.J. at 75-76 (citations omitted; emphasis supplied).  *See also Tarus v. Borough of Pine Hill*, 189 N.J. 497, 520 (2007). Reflecting on the common purpose of *res judicata* and collateral estoppel, the New Jersey Supreme Court observed:

> The doctrines of collateral estoppel, issue preclusion, res judicata, and the like serve the important policy goals of finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses, elimination of conflicts, confusion and uncertainty; and basic fairness…If an issue between the parties was fairly litigated and determined, it should not be relitigated.

*First Union Nat'l Bank v. Penn Salem Marina, Inc*., 190 N.J. 342, 352 (N.J. 2007) (citations omitted).

Under New Jersey law, "[a] party asserting collateral estoppel must show that

(1)    the issue to be precluded is identical to the issue decided in the prior proceeding;

(2)    the issue was actually litigated in the prior proceeding;

(3)    the court in the prior proceeding issued a final judgment on the merits;

(4)    the determination of the issue was essential to the prior judgment; and

(5)    the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding."

*In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (citation omitted, paragraphing added); *Sacharow*, 177 N.J. at 76 (*citing In re Estate of Dawson*, 136 N.J. 1, 20-21 (1994)); *Twp. of Middletown v. Simon*, 193 N.J. 228, 236 (2008).

In the instant case, the State Court summary judgment in the 2nd Foreclosure Action on January 9, 2015 readily meets the criteria of (2) actual litigation; (3) final judgment on the merits; (4) determination of an issue essential to prior judgment; and (5) privity of parties.  The issues actually determined by the State Court include the Debtors' indebtedness, the validity of the mortgage, the Lender's standing, Defendants' fraud and defective assignment claims and the Lender's [Defendants'] right to foreclose (Dkt. No. 11-7, Ex. F, 1/9/15 Hr'g Tr. 28:24-29:24).

The State Court moreover struck the Debtors' Answer and Counterclaim (the elements of which are summarized in n.2 above) as not raising a viable objection to the Lender's *prima facie* case.  Further, to the extent that any claims in the Complaint may not be barred by collateral estoppel (e.g., rescission), they are barred by *res judicata, infra*.

**D.   _Res judicata_**

*Res judicata* (claim preclusion) is an equitable doctrine which bars the relitigation of claims already litigated, or the litigation of claims *which could have been litigated*, between the same parties (or parties in privity with them) in the current litigation as in a prior litigation to judgment by a Court of competent jurisdiction.  *In re Mullarkey*, 536 F.3d at 225.  *Res judicata*

"protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy and [promotes] judicial economy by preventing needless litigation." *Parklane Hosiery*, 439 U.S. at 326.

The doctrine springs from the Full Faith and Credit Statute, 28 U.S.C. § 1738, which provides that:

> The . . . judicial proceedings of any court of any [State, Territory, or Possession of the United States] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.  Federal Courts apply the *res judicata* standard from the state from which the underlying judgment is taken.  *Marrese,* 470 U.S. at 380 (citations omitted).   In New Jersey, that standard is:

(1)    the judgment in the prior action must be valid, final, and on the merits;
(2)    the parties in the later action must be identical to or in privity with those in the prior action; and
(3)    the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*McNeil v. Legislative Apportionment Comm'n of N.J.*, 177 N.J. 364, 395 (2003) (quoted, paragraphing added); *In re Mullarkey*, 536 F.3d at 225.  To determine the third prong, the Court considers four factors:

(1)    whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions)…;
(2)    whether the theory of recovery is the same;
(3)    whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first)…; and
(4)    whether the material facts alleged are the same.

*Culver v. Ins. Co. of North Am.*, 115 N.J. 451, 461-62 (1989) (citations omitted).

The issues necessarily subsumed and decided in the grant of summary judgment by the State Court to the Lender/Defendants on January 9, 2015 include, under the validity of the mortgage and the indebtedness, all issues involving the making of the August 8, 2003 loan and mortgage, ownership of the debt, assignment, transferability, pooling, representations to the Debtors, misinterpretations by the Debtors.  These issues were necessarily decided in favor of the Lender and against the Debtors when the State Court granted summary judgment on January 9, 2015.  Further, if the Debtors had a rescission claim (and this Court has already held that they do not), it is certainly based on the same facts, transactions and events as their other claims and therefore could and should have been brought in the State Court Action.  Thus, all of the claims asserted by the Debtors in Counts II and III of the Adversary Complaint are barred from relitigation by either or both collateral estoppel and *res judicata*.  Accordingly, Counts II and III are dismissed with prejudice.  This ruling further supports the policies underlying claim and issue preclusion as it protects litigants from relitigating issues that were or could already have been litigated in a prior action (or actions) involving the same parties, promotes judicial economy and prevents needless, duplicative litigation.

### E. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine prevents a federal trial court from exercising appellate jurisdiction over a state court judgment.  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  "[T]he Rooker-Feldman doctrine divests a lower federal court of subject matter jurisdiction if the relief requested would effectively reverse a state court decision or void its ruling."  *In re Sabertooth*, 443 B.R. 671, 679 (Bankr. E.D. Pa. 2011), *aff'd In re Green Goblin, Inc.*, 2014 WL 5800601 (E.D. Pa. Nov. 16, 2014).  The Third Circuit criteria for applying the *Rooker-Feldman* doctrine are:

(1) the federal plaintiff lost in state court;
(2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments";
(3) those judgments were rendered before the federal suit was filed;
(4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)

(quoted, citations omitted), *cert. den.*, 563 U.S. 904 (2011).  The court in *Great W. Mining*

parsed *Exxon Mobil Corp. v. Saudi Basic Indus.,* 544 U.S. 280, 284 (2005) which reiterated the

principle:

> The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the
> kind from which the doctrine acquired its name: cases brought by state-
> court losers complaining of injuries caused by state-court judgments
> rendered before the district court proceedings commenced and inviting
> district court review and rejection of those judgments.

*Exxon Mobil*, 544 U.S. at 284.

        In the instant case, the Debtors' untenable claim at Count I for rescission of the note and

Debtors' issue- and/or claim-barred allegations at Counts II and III contesting the validity of the

mortgage and debt are all collateral attacks on the Final Judgment of Foreclosure entered in State

Court on May, 22, 2015 (Dkt. No. 11-8, Ex. G).  Thus, in addition to being barred by collateral

estoppel and/or *res judicata* or dismissed for failure to state a claim, the Bankruptcy Court is

prevented by the *Rooker-Feldman* doctrine from hearing any aspect of the Adversary Complaint.

        **F.  Litigation Privilege**

        The privilege serves to protect attorneys from various tort claims and defamation actions.

*Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 401 (D.N.J. 2009).  As recounted

by the Court in *Rickenbach*:

> The litigation privilege has deep roots in the common law of New Jersey.
> *Loigman v. Twp. Comm. of Twp. of Middletown,* 185 N.J. 566, 889 A.2d
> 426, 433 (2006). The privilege insures that "[s]tatements by attorneys,
> parties and their representatives made in the course of judicial or quasi-
> judicial proceedings are absolutely privileged and immune from liability."

*Rickenbach.* 635 F. Supp. 2d at 401 (citations omitted).

Whether litigation privilege applies in a particular case is a question of law evaluated against four elements: "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Rickenbach*, 635 F. Supp. 2d at 401, *citing Hawkins v. Harris*, 141 N.J. 207, 215-16 (1995). Statements by representatives of Saul Ewing LLP made in the Superior Court of New Jersey or United States Bankruptcy Court, District of New Jersey are: (1) made in a judicial proceeding; (2) by licensed attorneys; (3) toward the goal of obtaining a judgment; and (4) related to the cause of action. Thus, the claims against Saul Ewing are also barred by the litigation privilege.

Finally, the Court notes that the Debtors' Affidavit includes claims of wrongdoing by the Trustee. However, the Trustee is not a party to this adversary proceeding or the underlying note and mortgage. Thus, there is no need to address those claims on this motion to dismiss.

## V. CONCLUSION

For all of the foregoing reasons, and because the Debtors' objection does not refute any element of the Defendants' argument, the entire Adversary Complaint is dismissed with prejudice. An Order dismissing the Complaint was entered on June 30, 2016 (Dkt. No. 22). The dismissal is with prejudice because any attempted amendment of the Debtors' Complaint would be futile for the reasons stated above and would also subject Wells Fargo and this Court to continuing needless and duplicative litigation, and the expense and delay associated with it.


Dated: July 5, 2016                                    /s/Vincent F. Papalia
                                                       VINCENT F. PAPALIA
                                                       United States Bankruptcy Judge